MATILDE OTILIA ARBONA GARCÍA ET AL., demandantes y recurrentes, *v.* OTILIA MILLARES VÁZQUEZ ET AL., demandados y recurridos.

*Número:* R-73-289      *Resuelto:* 13 de septiembre de 1974

*Carlos García Méndez, Trías, Francis, Doval, Colorado & Carlo,* abogados de los recurrentes; *Yamil Galib Frangie,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Ramón Arbona Frontera nació ciudadano español en Soller, Mallorca y vino a Puerto Rico a los 13 años, donde adquirió domicilio para el resto de su larga vida. En 1919 contrajo primeras nupcias con Luisa Rullán, en Maricao, de cuyo matrimonio nació un solo hijo llamado Juan Javier Arbona Rullán, y quien premurió a su padre en 1957, sucediéndole los 3 hijos recurrentes Matilde, Carlos y Ramón y su viuda Yolanda García. Para 1927 murió la primera esposa de Arbona y en 1932 éste gestionó y obtuvo la aprobación de la antigua Corte de Distrito de Mayagüez para la partición de bienes de este matrimonio que se hizo partiendo de la existencia de una sociedad legal de gananciales. En 1931 Arbona celebró segundas nupcias en la ciudad de Nueva York con Otilia Millares, natural de La Coruña, Galicia, España, sin que otorgaran capitulaciones matrimoniales. El marido trajo su nueva esposa a su domicilio de Mayagüez perdurando dicha unión por 33 años hasta la muerte del causante en 1964. No hubo descendencia de este segundo matrimonio. Ambos renunciaron su ciudadanía española y adquirieron la de Estados Unidos de América, Arbona en 1933 y su esposa Otilia Millares en 1940. A lo largo de su extendida vida matrimonial estos cónyuges contrataron y actuaron bajo la premisa de hallarse sujetos al régimen de sociedad de gananciales, criterio y conducta que mantuvo Arbona hasta el final de su vida pues al otorgar testamento abierto el 25 de febrero de 1964 en Mayagüez, ante el notario Amador Ramírez Silva, lo hizo en observancia de dicho régimen económico vigente en su patria de adopción que fue Puerto Rico, haciendo constar expresamente que "con excepción de la suma de $47,000 que constituía su capital privativo a la fecha de sus nupcias con su actual esposa Doña Otilia Millares Vázquez, todos los demás bienes que forman su caudal hereditario pertenecen a la sociedad de gananciales que con ella tiene constituida"; y disponiendo en ese acto de última voluntad que a no ser porque su esposa rechazase expresamente

466

todos o algunos de ellos se adjudicasen "en pago parcial de la participación de su dicha esposa en los bienes hereditarios tal y como se ha dispuesto anteriormente en este testamento y en los que a ella correspondan por su mitad de gananciales" una serie de bienes muebles e inmuebles que procedió a identificar y relacionar.

■ La contención de los recurrentes nietos de Arbona es que corresponde a ellos la porción identificada como gananciales de la viuda Millares toda vez que en el 1931 cuando se casó con Arbona éste era todavía un ciudadano español sujeto al Fuero de Baleares por haber nacido en Mallorca, y el cual contrario al derecho común español dispone que a falta de capitulaciones se entenderá contraído el matrimonio bajo el régimen de absoluta separación de bienes (Arts. 3.° al 5.°, Compilación del Derecho Civil Especial de las Islas Baleares de 19 de abril de 1961). La Sala de instancia desestimó el planteamiento y en cuanto concierne a este recurso ordenó a los albaceas del causante Arbona practicar la partición del caudal hereditario reconociendo la existencia de una sociedad legal de gananciales con la segunda esposa recurrida, porque siendo Arbona un ciudadano de Puerto Rico aquí domiciliado desde los 13 años, su estatuto personal no era otro que el ordenado en el Art. 9 de nuestro Código Civil (31 L.P.R.A. sec. 9) al disponer: "Las leyes relativas a los derechos y deberes de familia, o al estado, condición y capacidad legal de las personas obligan a los ciudadanos de Puerto Rico, aunque residan en países extranjeros."

■ Sin que tengamos que decidir ahora si el estado de vecindad civil en el Estado Libre Asociado que identifica y otorga la condición de ciudadano de Puerto Rico tiene relieve en el campo internacional para prevalecer sobre otros estatutos personales fundados en la nacionalidad, la decisión del Tribunal Superior se ajusta a derecho y ha de ser estimada.

En el derecho civil español el principio común regidor de los bienes del matrimonio es el de sociedad de gananciales.

La separación de bienes entre los cónyuges es la excepción, a veces de origen contractual como en las capitulaciones matrimoniales, y en otros derivada de fueros provinciales como el de Mallorca, Ibiza y Formentera. Así dispone el derecho común nacional de España enmarcado en el Art. 1315 de su Código Civil: "Los que se unan en matrimonio podrán otorgar sus capitulaciones antes de celebrarlo, estipulando las condiciones de la sociedad conyugal relativamente a los bienes presentes y futuros, sin otras limitaciones que las señaladas en este Código. A falta de contrato sobre los bienes, se entenderá el matrimonio contraído bajo el régimen de la sociedad legal de gananciales."

■ El matrimonio de españoles en el extranjero (1) está regulado por el Art. 1325 del mismo cuerpo que copiamos: "Si el casamiento se contrajere en país extranjero entre español y extranjera o extranjero y española, y nada declarasen o estipulasen los contratantes relativamente a sus bienes, se entenderá, cuando sea español el cónyuge varón, que se casa bajo el régimen de la sociedad de gananciales, y, cuando fuere española la esposa, que se casa bajo el régimen del derecho común en el país del varón, todo sin perjuicio de lo establecido en este Código respecto de los bienes inmuebles." La unión entre españoles celebrada en el extranjero, aun cuando el Art. 1325 se refiere sólo a matrimonios mixtos, ha sido incluida en los términos del precepto por interpretación analógica. Bonet y Ramón, *Compendio de Derecho Civil*, Tom. 4, pág. 509, Ed. 1960.

■ Es norma preeminente en el establecimiento de regímenes económicos para el matrimonio de los ciudadanos españoles la libertad de estipulación en cuyo ejercicio podrán los

---

(1) Los españoles en el extranjero quedan vinculados por un estatuto personal enunciado en el Art. 9 del Código Civil Español que dice:

"Las Leyes relativas a los derechos y deberes de familia, o al estado, condición y capacidad legal de las personas, obligan a los españoles, aunque residan en país extranjero."

cónyuges, valiéndose de las capitulaciones matrimoniales, diseñar a su gusto un régimen para gobierno de la propiedad común, sin más restricciones que aquellas que imponen la ley, la moral y el orden público a todos los contratantes. Es sólo en ausencia de ese régimen convencional libremente adoptado por los contrayentes, que toma el campo el sistema de sociedad legal de gananciales tanto en el derecho común nacional español como en el derecho foral. A modo de corolario de la autonomía para contratar sobre bienes con ocasión de matrimonio surge la doctrina de la voluntad presunta, aduciéndose que quien es libre para pactar con su cónyuge antes del matrimonio, de no hacerlo conservará libertad durante el curso de su vida para adquirir nuevo domicilio y adoptar sus costumbres, su forma de vida, y sus prácticas de negocios, viniendo eventualmente por elección a ser sujeto de un estatuto personal distinto al que le dio su cuna. Batiffol: *Traité élémentaire de Droit international privé*. París, 1949, págs. 632 a 636.

■ No deben pues rechazarse como errónea expresión del Derecho las disposiciones testamentarias de Arbona reconociendo un régimen ganancial que afecta los bienes por él acumulados en su matrimonio de 33 años con la recurrida, como tampoco actuó en error cuantas veces contrató y realizó actos afectando la propiedad común como si de gananciales se tratara. Fueron éstos, por el contrario, indicios claros de su tácita voluntad de regir su persona y su propiedad por la ley del único domicilio que conoció en su vida adulta cuando advino a la facultad de discernimiento.

■ Mas si no bastaran las ejecutorias relatadas para desterrar de este caso la sombra absurda de un fuero provincial, provee la solución justa el Art. 1325 del Código Civil Español, citado. Si bien el causante Arbona era un aforado mallorquín, su nacionalidad de origen era la española. Al contraer nupcias en Nueva York ante el derecho internacional privado

su estatuto personal era el de su nación, España, y no el de Mallorca.

". . . debe reputarse como uno de los efectos civiles del matrimonio celebrado sin previas capitulaciones matrimoniales, el de someter los esposos al derecho común en todo lo concerniente al régimen de los bienes que les pertenecen, y que el derecho común a que deben considerarse sometidos debe ser el del Estado de que el marido sea ciudadano en el momento de celebrar el matrimonio." Fiore, *Derecho Internacional Privado*, Madrid, 1888, Tomo 2, pág. 381.

Igual criterio sustenta Manresa al expresar:

"Cuando el matrimonio se verifica en el extranjero, la cuestión varía por completo. Las costumbres del país no tienen fuerza fuera de él. Sus leyes no prevén ese caso, y el artículo 1.325 tiene una fuerza supletoria indiscutible. Aun prescindiendo de estas razones, existe una muy poderosa. Cuando se trata de relaciones internacionales, no cabe hablar de castellanos ni de aragoneses o catalanes, no hay más que españoles. ¿Cuál debe ser el régimen económico supletorio? El del Derecho común en España, o sea, el de gananciales. El Código muestra claramente su criterio en este sentido al decir que al casarse un extranjero con una española debe regir la ley del Derecho común en el país del varón. Podrá extralimitarse al dar solución determinada a un problema que deben decidir o resolver las leyes del país respectivo, pero muestra de un modo evidente que, según su criterio, en las relaciones internacionales no cabe atender a leyes o fueros especiales, sino sólo a las generales o de Derecho común.

Por tanto, entendemos desde luego que el catalán o el vizcaíno que se casan en el extranjero y no otorgan capitulaciones matrimoniales rigen su sociedad conyugal por el sistema de gananciales, pues han de considerarse simplemente como españoles." Manresa, *Comentarios al Código Civil Español*, Tomo 9, págs. 240 a la 241, Sexta Ed., Madrid, 1969.

Valverde concurre en esta interpretación del Art. 1325 del Código Civil Español afirmando:

"Este artículo no habla más que de españoles; ante el extranjero no se puede hablar de catalanes, castellanos, etc., y

por tanto, en defecto de capitulaciones matrimoniales, regirá, sea de cualquiera región el español, el régimen de gananciales." Valverde, *Tratado de Derecho Civil Español*, Tomo IV, pág. 288, Cuarta Ed., Valladolid, 1938.

Por tanto, desde un principio, y aun antes de asentar su matrimonio en el domicilio mayagüezano, por la misma vía de imposición legislativa que se invoca para desempolvar el fuero mallorquín, el matrimonio de Ramón Arbona y Otilia Millares adquirió como régimen el de la sociedad de gananciales del Código Civil Español igual al provisto en nuestro propio Código. Convergen en la solución justa la voluntad del testador y el ordenamiento de Derecho.

*Se confirmará la sentencia revisada.*

El Juez Presidente Señor Trías Monge, y el Juez Asociado Señor Martín, no intervinieron.